IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUSSELL D. MILES, | ) No. C 10-05948 EJD (PR) |
| Plaintiff, | ) ORDER GRANTING MOTION FOR |
| v. | ) SUMMARY JUDGMENT; GRANTING |
| | ) MOTION TO DISMISS; DIRECTING |
| | ) DEFENDANT WILLIAMS TO FILE |
| | ) MOTION FOR SUMMARY |
| DR. MACK, et al., | ) JUDGMENT OR OTHER |
| | ) DISPOSITIVE MOTION |
| Defendants. | ) |
| _____ | ) (Docket Nos. 28 & 32) |

Plaintiff, an inmate at the Salinas Valley State Prison ("SVSP), filed a pro se civil rights complaint under 42 U.S.C. § 1983, challenging the conditions of his confinement. The Court found cognizable Plaintiff's claims against Defendants Dr. Mack, Dr. Bright, Nurse L. Fox, Dr. Sepulveda, Dr. G. Williams and C. Hammond, and ordered service of the complaint. Defendants Mack, Bright, Fox and Sepulveda filed a motion for summary judgment. (Docket No. 28.) Plaintiff filed opposition to Defendants' motion for summary judgment, and Defendants filed a reply. Defendant Hammond filed a motion to dismiss for failure to state a claim upon which relief can be granted. (Docket No. 32.) Plaintiff did not file opposition to Defendant Hammond's motion to dismiss although given an opportunity to do so.

///

# DISCUSSION

## I. Statement of Facts

The following facts are undisputed unless otherwise indicated.

Plaintiff alleges that he has been suffering from "excruciating chronic lower back pain" ever since he was in county jail in 2007. (Compl. at 3.) Plaintiff was admitted to the California Department of Corrections and Rehabilitation ("CDCR") in September 2009, at which time Plaintiff claims his condition worsened to the point that he needed a cane to help him walk. (Id. at 3.) One month later, he was transferred to Wasco State Prison-Reception Center ("Wasco"), where his condition worsened further and he needed a walker to "stabilize his balance and mobility." (Id. at 4.) Plaintiff alleges that the pain became so severe that it caused "paralysis in his legs." (Id.) He was seen by Dr. Odeluga, who prescribed pain medication and ordered an MRI on October 22, 2009. According to Plaintiff, the MRI of the lumbar spine confirmed that he had back problems. (Id.) Plaintiff claims that the MRI revealed "a herniated disk/displaced disk and nerve protruding from the L4 - L5 vertebrae," and that Dr. Odeluga recommended Plaintiff undergo neurosurgery on November 25, 2009. (Id.) Plaintiff also alleges that Dr. Odeluga prescribed a wheelchair for his use. (Compl. at 3.) According to Defendants, the MRI report indicated possible degenerative, arthritic conditions with no evidence of acute injury. (Bright Decl., Ex. A.) Defendants also assert that x-rays taken of Plaintiff's lumbar spine on October 19, 2009, were normal. (Moore Decl., Ex. A.) Defendants assert that contrary to Plaintiff's claim that Dr. Odeluga recommended neurosurgery, Dr. Odeluga actually submitted a "Physician Request for Service" ("Request") for an initial consultation with a neurosurgeon to further evaluate Plaintiff's complaints of pain. (Bright Decl., Ex. B.) Plaintiff was transferred to SVSP on December 28, 2009.

Plaintiff claims that on January 8, 2010, medical staff at SVSP denied his surgery without any explanation. (Compl. at 5.) According to Defendants, the Request for a consultation with a neurosurgeon submitted by Dr. Odeluga was denied by Wasco medical staff because Plaintiff was transferred to another institution. (Bright Decl., Ex.

B.)

On January 27, 2010, Plaintiff submitted a Reasonable Modification Accommodation Request ("RMAR") seeking an "ADA cell" with grab bars, wheelchair gloves and a narrower wheelchair. (Moore Decl., Ex. B.) Defendant Dr. Bright reviewed Plaintiff's medical records and conducted an interview and physical examination of Plaintiff on February 12, 2010. (Bright Decl. ¶ 8,, Ex. C.) Dr. Bright determined that a wheelchair was not medically necessary for Plaintiff as "there was little, if any, clinical evidence or indication to support Plaintiff's claims that he was mobility impaired." (Id.) An electromyogram (EMG) was performed on Plaintiff on February 10, 2010. Dr. Bright reviewed the EMG results and determined that they supported his determination that a wheelchair was not medically necessary. (Id. ¶ 9, Ex. D.) On March 1, 2010, Plaintiff was informed of Dr. Bright's decision to discontinue the wheelchair. (Id. ¶ 10, Ex. C.) Although he discontinued the wheelchair, Dr. Bright prepared a Comprehensive Accommodation Chrono to authorize the permanent use of a seated walker. (Id.)

On April 8, 2010, Plaintiff filed another Reasonable Modification Accommodation Request seeking extra mattresses, extra pillows, and additional pain medication, which was evaluated and denied as medically unnecessary. (Moore Decl., Ex. C.)

On June 30, 2010, Plaintiff underwent a consultation with Defendant Dr. Williams regarding his rehabilitation options. (Id., Ex. D.) Plaintiff informed Dr. Williams that his goal was to get a wheelchair. Dr. Williams advised Plaintiff that a wheelchair would increase his pain and was not medically indicated. (Id.) Dr. Williams opined that Plaintiff was not a good rehabilitation candidate as Plaintiff appeared to be misrepresenting his symptoms during the examination. (Id.) Petitioner claims that Defendant Dr. Williams "in his consultation with [Defendant] Dr. Sepulveda discredits... what Petitioner conveyed to him about his severe pain and inabilities." (Compl. at 5.)

Plaintiff claims that his primary care provider Defendant Dr. Mack witnessed his mobility impairment numerous times, but continuously failed to give Petitioner the "adequate medical care that is needed" while he continues to "severe lower back pain and

having difficulties in ambulating." (Id.) Plaintiff claims that Defendants Nurse Fox, Dr. Sepulveda, Dr. Williams and Hammond all supported Dr. Mack and Dr. Brights' decision "to refuse [Plaintiff] with the adequate medical treatment to alleviate [Plaintiff's] pain and suffering and difficulties in ambulating," and as such acted with deliberate indifference to his serious medical needs. (Id. at 6.)

## II.     Summary Judgment

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Cattrett, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. See Celotex Corp., 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id. at 325. If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted. See Liberty Lobby, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by

Order Granting MSJ.; Granting MTD
G:\PRO-SE\SJ.EJD\CR.10\Miles05948_grant-msj&mtd.wpd            4

her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324 (citations omitted). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Id. at 323.

The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fact. See T.W. Elec. Serv., Inc. V. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. See id. at 631. It is not the task of the district court to scour the record in search of a genuine issue of triable fact. Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. Id. If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party. See id.; see, e.g., Carmen v. San Francisco Unified School District, 237 F.3d 1026, 1028-29 (9th Cir. 2001).

**A.     Legal Claims and Analysis**

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's health or safety. See Farmer v. Brennan, 511 U.S. 825, 834 (1994).

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." Id. The following are examples of indications that a prisoner has a "serious" need for medical treatment: the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that

significantly affects an individual's daily activities; or the existence of chronic and substantial pain. <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059-60 (9th Cir. 1992), <u>overruled on other grounds</u>, <u>WMX Technologies, Inc. v. Miller</u>, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

A prison official exhibits deliberate indifference when he knows of and disregards a substantial risk of serious harm to inmate health. See <u>Farmer</u>, 511 U.S. at 837. The official must both know of "facts from which the inference could be drawn" that an excessive risk of harm exists, and he must actually draw that inference. <u>Id.</u> "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." <u>Franklin v. Oregon</u>, 662 F.2d 1337, 1344 (9th Cir. 1981). Similarly, a showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference, <u>see</u> <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1058, 1059-60 (9th Cir. 2004); <u>Sanchez v. Vild</u>, 891 F.2d 240, 242 (9th Cir. 1989); <u>Mayfield v. Craven</u>, 433 F.2d 873, 874 (9th Cir. 1970). In order to prevail on a claim involving choices between alternative courses of treatment, a plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that he or she chose this course in conscious disregard of an excessive risk to plaintiff's health. <u>Toguchi</u>, 391 F.3d at 1058; <u>Jackson v. McIntosh</u>, 90 F.3d 330, 332 (9th Cir. 1996) (citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994)).

### 1. **Back Surgery**

Plaintiff claims that Defendants wrongfully denied him neurosurgery for his back. Defendants have submitted evidence showing that they were not responsible for the alleged denial of neurosurgery on January 8, 2010. Rather, the denial came from Wasco after Plaintiff was transferred to another institution. (Bright Decl., Ex. B.) In opposition, Plaintiff submits a "Health Care Services Physician Request for Services" form which he asserts is "verification" that he was in need of neurosurgery. (Oppo. at 4, Ex. A.) However, as Defendants point out in their reply, this form was completed by Dr. Odeluga

at Wasco to request that Plaintiff have an initial, routine consultation with a neurosurgeon to evaluate his condition. (Reply at 2.) The request was denied because Plaintiff was transferred to SVSP, as indicated by the notation "xfred SVSP." (Oppo., Ex. A.) The Court has reviewed the form and finds that Defendants' explanation is correct. Plaintiff is mistaken in his belief that this form is evidence of his claim that Dr. Odeluga recommended neurosurgery, when in fact he actually only recommended an initial, routine consultation, or that SVSP medical staff were responsible for the denial. Plaintiff's allegation that "medical staff" at SVSP denied his surgery without any explanation is factually incorrect and contradicted by the evidence.

The evidence submitted by Defendants clearly shows that they were not responsible for the alleged denial of back surgery as Plaintiff claims. Rather, the evidence shows that Plaintiff was never actually approved for back surgery at any time. Accordingly, it cannot be said that Defendants acted with deliberate indifference to Plaintiff's medical needs in this regard. There is no indication that Defendant knew of and yet disregarded a substantial risk of serious harm to Plaintiff's health. See Farmer, 511 U.S. at 837. Accordingly, this claim is factually without merit.

### 2. **Wheelchair**

Plaintiff claims that Defendants wrongfully confiscated his wheelchair in violation of the Eighth Amendment. Defendants assert that Plaintiff received timely and appropriate medical attention for his condition.

Defendants argue that in considering Plaintiff's RMAR submitted on January 27, 2010, (requesting an "ADA cell" with grab bards, wheelchair gloves and a narrower wheelchair), Dr. Bright reviewed Plaintiff's medical records, and conducted an interview and physical examination of Plaintiff. See supra at 3. Dr. Bright also took into consideration Plaintiff's EMG results from February 10, 2010. Id. Dr. Bright determined that a wheelchair was not medically necessary as "there was little, if any, clinical evidence or indication to support [Plaintiff's] claims that he was mobility impaired." Id. Rather than a wheelchair, Dr. Bright determined that a seated walker was more

1  appropriate and authorized a permanent one for Plaintiff to assist with mobility as needed.
2  Id.

3　　　　When Plaintiff's filed another RMAR on April 8, 2010, (seeking extra mattresses,
4  extra pillows, and additional pain medication), the request was rejected by Defendant
5  Nurse Fox.  (Mack Decl., Ex. C.)  The discussion of findings state that Dr. Bright had
6  advised Plaintiff that he did not meet the criteria for prescription of a pressure mattress or
7  pillows as a means to be used to contribute towards his pain management.  (Id.)  The
8  findings include the notation that Plaintiff was seen able to attend the scheduled
9  appointment with Dr. Bright "walking slowly and using the seated walker" he was
10 recently provided with.  (Id.)

11　　　　Lastly, Plaintiff was also seen by Dr. Williams, who interviewed Plaintiff and
12 conducted an examination.  (Id., Ex. D.)  Dr. Williams concluded that Plaintiff was not a
13 good candidate for rehabilitation because it appeared that he would go so far as to
14 misrepresent his symptoms in order to obtain a wheelchair.  (Id.)  Dr. Williams advised
15 Plaintiff that a wheelchair would increase his pain and was not medically indicated.  (Id.)

16　　　　Viewing the evidence in the light most favorable to Plaintiff, there is no evidence
17 to suggest that Defendants acted with deliberate indifference in discontinuing the use of a
18 wheelchair.  Rather, this claim is clearly nothing more than a difference of medical
19 opinion as to the need to pursue one course of treatment over another, which is
20 insufficient, as a matter of law, to establish deliberate indifference.  See Toguchi, 391
21 F.3d at 1058, 1059-60.  Furthermore, Plaintiff has failed to show that the course of
22 treatment chosen by Defendants, *i.e.*, prescribing a seated walker versus a wheelchair,
23 was medically unacceptable under the circumstances.  It was Dr. Williams' opinion that
24 "[e]stablishing wheelchair dependence, even if psychological, will hurt [Plaintiff] in the
25 long run as it will lead to decreased functional status and increased myofascial pain" and
26 that "a wheelchair is not medically indicated and is relatively contraindicated."  (Moore
27 Decl., Ex. D at 1.)  Against medical advice, Plaintiff continued to insist that a wheelchair
28 was medically necessary and sought increased pain medication for the added pain.  It

appears that Plaintiff's chosen course of treatment would result in an increased risk to his health, contrary to medical advice. Considering Defendants' concern for Plaintiff's long term health and pain management, it cannot be said that they chose a course of treatment in conscious disregard of an excessive risk to Plaintiff's health. Toguchi, 391 F.3d at 1058.

In opposition, Plaintiff claims that subsequent to filing this action, he was issued a wheelchair by Dr. Bright on August 2, 2011. (Oppo. at 5, Ex. C.) Plaintiff claims he was recently diagnosed with multiple sclerosis by qualified medical personnel at SVSP and an outside specialist. (Id.) In reply, Defendants argue that multiple sclerosis is an autoimmune disease that affects the brain and central nervous system, and that Plaintiff's recent diagnosis does not demonstrate that a wheelchair was medically necessary for him back in March 2010. Indeed, there is nothing to suggest in the complaint or other submitted briefs that the alleged medical needs from 2010 are related to his recent diagnosis.

Defendants having met their initial burden, the burden then shifts to Plaintiff to designate specific facts showing that there is a genuine issue for trial. Celotex Corp., 477 U.S. at 324 (citations omitted). Plaintiff has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. Keenan, 91 F.3d at 1279. He has failed to do so. Accordingly, Defendants are entitled to judgment as a matter of law with respect to this claim. Celotex Corp., 477 U.S. at 323.

### 3. Chronic Lower Back Pain

Plaintiff claims generally that his primary care provider Defendant Dr. Mack has continuously failed to give Petitioner the "adequate medical care that is needed" while he continues to "severe lower back pain and having difficulties in ambulating." (Compl. at 5.) Plaintiff claims that Defendants Nurse Fox, Dr. Sepulveda, Dr. Williams and Hammond all supported Dr. Mack and Dr. Brights' decision "to refuse [Plaintiff] with the adequate medical treatment to alleviate [Plaintiff's] pain and suffering and difficulties in ambulating." (Id. at 6.) Defendants argue that Plaintiff's medical records clearly

1  demonstrate that he received substantial care for his claimed lower back pain, including
2  pain medication.  (Docket No. 28 at 12.)

3        Based on the evidence presented, Plaintiff has failed to show that Defendants
4  knowingly disregarded a substantial risk of serious harm to Plaintiff.  The medical records
5  show that Plaintiff was seen several times by Defendants to address his complaints of
6  back pain, and that each time he was thoroughly interviewed and examined. Other than
7  his allegation that he was wrongfully denied back surgery and a wheelchair, Plaintiff
8  makes no specific allegation that his medical needs were not properly treated.  If by
9  "adequate medical treatment" Plaintiff means that Defendants should have prescribed
10 back surgery and a wheelchair, he fails to state a claim for the reasons discussed above.
11 See supra at 9; see Toguchi, 391 F.3d at 1058, 1059-60.  Plaintiff has failed to
12 demonstrate a genuine issue of material fact with regards to his medical claim.
13 Accordingly, Defendants are entitled to judgment as a matter of law.  Celotex Corp., 477
14 U.S. at 323.

15 **III.     Motion to Dismiss**

16       Plaintiff's only factual allegation against Defendant Hammond is that he denied
17 three of Plaintiff's inmate appeals at the third formal level.  (Compl. at 3.)  Plaintiff
18 alleges generally that Defendants Fox, Dr. Sepulveda, Dr. Williams *and Hammond* all
19 supported Dr. Mack and Dr. Brights' decision "to refuse [Plaintiff] with the adequate
20 medical treatment to alleviate [Plaintiff's] pain and suffering and difficulties in
21 ambulating." (Compl. at 6 (italics added).)  However, as discussed above, this Eighth
22 Amendment claim is without merit.

23       Defendant Hammond moves to dismiss the claims against him for failure to state a
24 claim upon which relief can be granted.  (Docket No. 32.)  It is undisputed that Defendant
25 Hammond is an appeals examiner at the California Department of Corrections and
26 Rehabilitation, and his only involvement in this matter is with respect to the exhaustion of
27 Plaintiff's administrative remedies.  Defendant asserts that liberally construed, the only
28 claim that Plaintiff can possibly be asserting is a violation of his right to an inmate

grievance process. As such, Defendant argues that the claim must be dismissed because there is no federal constitutional right to a properly functioning inmate grievance system for California inmates.

Failure to state a claim is a grounds for dismissal before service under both sections 1915A and 1915(e)(2), as well as under Rule 12(b)(6). Dismissal for failure to state a claim is a ruling on a question of law. See Parks School of Business, Inc., v. Symington, 51 F.3d 1480, 1483 (9th Cir. 1995). "The issue is not whether plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the statement need only '"give the defendant fair notice of what the . . . . claim is and the grounds upon which it rests."'" Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (citations omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 553-56 (2007) (citations omitted). A motion to dismiss should be granted if the complaint does not proffer "enough facts to state a claim for relief that is plausible on its face." Id. at 570; see, e.g., Ashcroft v. Iqbal, 129 S. Ct. 1937, 1952 (2009) (finding under Twombly and Rule 8 of the Federal Rules of Civil Procedure, that complainant-detainee in a Bivens action failed to plead sufficient facts "plausibly showing" that top federal officials "purposely adopted a policy of classifying post-September-11 detainees as 'of high interest' because of their race, religion, or national origin" over more likely and non-discriminatory explanations).

Here, Plaintiff fails to state a claim upon which relief may be granted against Defendant Hammond based on the facts alleged in his complaint. Other than identifying

1  Defendant Hammond as the appeals examiner of his several inmate appeals, Plaintiff
2  makes no specific factual allegation of wrongdoing on the part of Defendant Hammond.
3  Furthermore, Plaintiff has filed no opposition disputing Defendant's argument or any
4  pleading indicating his desire to amend his complaint with respect to his claims against
5  Defendant Hammond although he has been given an opportunity to do so.
6      Furthermore, even if the Court liberally construes the complaint and finds Plaintiff
7  is attacking the proper administration of his inmate appeals, there is no cognizable claim
8  for the violation of his right to due process.  See Ramirez v. Galaza, 334 F.3d 850, 860
9  (9th Cir. 2003) (holding that there is no constitutional right to a prison administrative
10 appeal or grievance system); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988) (same).
11 Accordingly, Defendant's motion to dismiss, (Docket No. 32), is GRANTED for failure
12 to state a claim.  See Twombly, 550 U.S. at 570.

### CONCLUSION

For the reasons stated above,

1. Defendants' motion for summary judgment is GRANTED.  (Docket No. 28.)  Plaintiff's Eighth Amendment claims against Defendants Dr. Mack, Dr. Bright, Nurse L. Fox, and Dr. Sepulveda, are DISMISSED with prejudice.[1]

Defendant C. Hammond's motion to dismiss for failure to state a claim, (Docket No. 32), is GRANTED.  All claims against him are DISMISSED with prejudice.

The Clerk shall terminate these Defendants from this action.

2. This matter shall proceed on the claims against Defendant Dr. Williams. Defendant Williams shall file a motion for summary judgment or other dispositive motion with respect to the claims against him found to be cognizable **no later than twenty-eight (28) days** from the date this order is filed.  Briefing shall proceed thereafter in accordance

---

[1] Because the Court finds that no constitutional violation occurred, it is not necessary to reach Defendants' qualified immunity argument.

with the schedule and instructions set forth in the Court's Order of Service, filed May 17, 2011, (Docket No. 6).

Defendant is advised that he must concurrently, with the motion for summary judgment, set forth the proper warnings under Rand v. Rowland, 154 F.3d 952, 963 (9th Cir. 1998) (en banc). See Woods v. Carey, Nos. 09-15548 & 09-16113, slip op. 7871, 7874 (9th Cir. July 6, 2012).

This order terminates Docket Nos. 28 and 32.

DATED: 9/17/2012

EDWARD J. DAVILA
United States District Judge
Order Granting MSJ.; Granting MTD
G:\PRO-SE\SJ.EJD\CR.10\Miles05948_grant-msj&mtd.wpd        13

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

RUSSELL D. MILES,

        Plaintiff,

  v.

DR. MACK, et al.,

        Defendants.

Case Number: CV10-05948 EJD

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on 9/17/2012, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Russell D. Miles #AA7376
Salinas Valley State Prison
P.O. Box 1050
Soledad, CA 93960

Dated: 9/17/2012

        Richard W. Wieking, Clerk
        /s/ By: Elizabeth Garcia, Deputy Clerk