IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUSSELL D. MILES,<br>Plaintiff,<br>v.<br>DR. MACK, et al.,<br>Defendants. | No. C 10-05948 EJD (PR)<br>ORDER GRANTING DEFENDANT DR. WILLIAMS' MOTION FOR SUMMARY JUDGMENT<br>(Docket No. 46) |

Plaintiff, an inmate at the Salinas Valley State Prison ("SVSP), filed a pro se civil rights complaint under 42 U.S.C. § 1983, challenging the conditions of his confinement. The Court granted Defendants Dr. Mack, Dr. Bright, Nurse L. Fox, Dr. Sepulveda, and C. Hammond's motion for summary judgment and motion to dismiss, such that only the claim against Defendant Dr. G. Williams remains. (Docket No. 45.) Defendant Williams has filed a motion for summary judgment. (Docket No. 46.) Plaintiff did not file opposition to the motion although given an opportunity to do so.

**DISCUSSION**

**I. Statement of Facts**

The following facts are undisputed unless otherwise indicated.

Plaintiff alleges that he has been suffering from "excruciating chronic lower back pain" ever since he was in county jail in 2007. (Compl. at 3.) Plaintiff was admitted to the California Department of Corrections and Rehabilitation ("CDCR") in September 2009, at which time Plaintiff claims his condition worsened to the point that he needed a cane to help him walk. (Id. at 3.) One month later, he was transferred to Wasco State Prison-Reception Center ("Wasco"), where his condition worsened further and he needed a walker to "stabilize his balance and mobility." (Id. at 4.) Plaintiff alleges that the pain became so severe that it caused "paralysis in his legs." (Id.) He was seen by Dr. Odeluga, who prescribed pain medication and ordered an MRI on October 22, 2009. According to Plaintiff, the MRI of the lumbar spine confirmed that he had back problems. (Id.) Plaintiff claims that the MRI revealed "a herniated disk/displaced disk and nerve protruding from the L4 - L5 vertebrae," and that Dr. Odeluga recommended Plaintiff undergo neurosurgery on November 25, 2009. (Id.) Plaintiff also alleges that Dr. Odeluga prescribed a wheelchair for his use. (Compl. at 3.) According to Defendants, the MRI report indicated possible degenerative, arthritic conditions with no evidence of acute injury. (Bright Decl., Ex. A.) Defendants also assert that x-rays taken of Plaintiff's lumbar spine on October 19, 2009, were normal. (Moore Decl., Ex. A.) Defendants assert that contrary to Plaintiff's claim that Dr. Odeluga recommended neurosurgery, Dr. Odeluga actually submitted a "Physician Request for Service" ("Request") for an initial consultation with a neurosurgeon to further evaluate Plaintiff's complaints of pain. (Bright Decl., Ex. B.) Plaintiff was transferred to SVSP on December 28, 2009.

Plaintiff claims that on January 8, 2010, medical staff at SVSP denied his surgery without any explanation. (Compl. at 5.) According to Defendants, the Request for a consultation with a neurosurgeon submitted by Dr. Odeluga was denied by Wasco medical staff because Plaintiff was transferred to another institution. (Bright Decl., Ex. B.)

On January 27, 2010, Plaintiff submitted a Reasonable Modification Accommodation Request ("RMAR") seeking an "ADA cell" with grab bars, wheelchair

gloves and a narrower wheelchair. (Moore Decl., Ex. B.) Defendant Dr. Bright reviewed Plaintiff's medical records and conducted an interview and physical examination of Plaintiff on February 12, 2010. (Bright Decl. ¶ 8,, Ex. C.) Dr. Bright determined that a wheelchair was not medically necessary for Plaintiff as "there was little, if any, clinical evidence or indication to support Plaintiff's claims that he was mobility impaired." (Id.) An electromyogram (EMG) was performed on Plaintiff on February 10, 2010. Dr. Bright reviewed the EMG results and determined that they supported his determination that a wheelchair was not medically necessary. (Id. ¶ 9, Ex. D.) On March 1, 2010, Plaintiff was informed of Dr. Bright's decision to discontinue the wheelchair. (Id. ¶ 10, Ex. C.) Although he discontinued the wheelchair, Dr. Bright prepared a Comprehensive Accommodation Chrono to authorize the permanent use of a seated walker. (Id.)

On April 8, 2010, Plaintiff filed another Reasonable Modification Accommodation Request seeking extra mattresses, extra pillows, and additional pain medication, which was evaluated and denied as medically unnecessary. (Moore Decl., Ex. C.)

In early June 2010, Defendant Dr. Williams was requested to perform an evaluation of Plaintiff for possible physical therapy and recommendations for complaints of hip pain and a left foot drop. (Williams Decl. ¶ 5.) Dr. Williams has a specialty in the area of physical medicine and rehabilitation, for assessing people with disabilities and ordering treatment plans to address and accommodate those disabilities. (Id. ¶ 3.) The requesting physician requested a functional assessment of Plaintiff, and whether there was a need for a foot brace or crutches. (Id. ¶ 5.)

On June 30, 2010, Plaintiff underwent a consultation with Dr. Williams regarding his rehabilitation options. (Id., Ex. A.) Plaintiff informed Dr. Williams that his goal was to "become functional, not have pain and get a wheelchair." (Id.) Dr. Williams advised Plaintiff that his goals were incompatible because a wheelchair would make him less functional. (Id.) He also advised Plaintiff that the recommended treatment for his particular pain would be to increase his movement and follow an exercise program, which would include stretching exercises, strengthening core muscles and improving posture.

(Id.) After he observed and examined Plaintiff, Dr. Williams determined that a wheelchair was not medically indicated at that time and would likely cause more long-term harm than benefit. (Id.) Although Dr. Williams did not believe that Plaintiff was a good rehabilitation candidate, he nevertheless recommended that Plaintiff be given a trial of physical therapy in the hopes of demonstrating that a wheelchair and additional pain medication was not the recommended treatments for his complaints. (Id.) Petitioner claims that Defendant Dr. Williams "in his consultation with [Defendant] Dr. Sepulveda discredits... what Petitioner conveyed to him about his severe pain and inabilities." (Compl. at 5.) Plaintiff claims that Dr. Williams, along with other Defendants, supported Dr. Mack and Dr. Brights' decision "to refuse [Plaintiff] with the adequate medical treatment to alleviate [Plaintiff's] pain and suffering and difficulties in ambulating," and as such acted with deliberate indifference to his serious medical needs. (Id. at 6.)

## II. Summary Judgment

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Cattrett, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. See Celotex Corp., 477 U.S. at 323. Where the moving party will have the burden of proof on

an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id. at 325. If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted. See Liberty Lobby, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324 (citations omitted). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Id. at 323.

The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fact. See T.W. Elec. Serv., Inc. V. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. See id. at 631. It is not the task of the district court to scour the record in search of a genuine issue of triable fact. Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. Id. If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party. See id.; see, e.g., Carmen v. San Francisco Unified School District, 237 F.3d 1026, 1028-29 (9th Cir. 2001).

**A. Legal Claims and Analysis**

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately

indifferent to the inmate's health or safety. See Farmer v. Brennan, 511 U.S. 825, 834 (1994).

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." Id. The following are examples of indications that a prisoner has a "serious" need for medical treatment: the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

A prison official exhibits deliberate indifference when he knows of and disregards a substantial risk of serious harm to inmate health. See Farmer, 511 U.S. at 837. The official must both know of "facts from which the inference could be drawn" that an excessive risk of harm exists, and he must actually draw that inference. Id. "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981). Similarly, a showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference, see Toguchi v. Chung, 391 F.3d 1051, 1058, 1059-60 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Mayfield v. Craven, 433 F.2d 873, 874 (9th Cir. 1970). In order to prevail on a claim involving choices between alternative courses of treatment, a plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that he or she chose this course in conscious disregard of an excessive risk to plaintiff's health. Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

Plaintiff claims that Dr. Williams, along with other Defendants, supported Dr.

Mack and Dr. Brights' decision "to refuse [Plaintiff] with the adequate medical treatment to alleviate [Plaintiff's] pain and suffering and difficulties in ambulating." (Id. at 6.) Defendant Williams argues that Plaintiff received proper medical treatment for his lower back pain, and that a wheelchair was not medically necessary. (Docket No. 46 at 4-5.)

Based on the evidence presented, Plaintiff has failed to show that Defendant Dr. Williams provided constitutionally inadequate medical care. Dr. Williams was asked to examine Plaintiff for possible therapy and recommendations for treating Plaintiff's complaints, and the record shows that he performed the examination and spoke with Plaintiff about his goals. See supra at 3-4. When Plaintiff stated that his goals were to "become functional, not have pain and get a wheelchair," Dr. Williams advised Plaintiff that his goals were incompatible because a wheelchair would make Plaintiff less functional. Id. Furthermore, Dr. Williams' conclusion was that a wheelchair was not medically indicated and that it would likely cause more long-term harm than benefit. Id. Plaintiff takes issue with the fact that Dr. Williams did not recommend a wheelchair as part of his treatment plan even though Plaintiff believed that a wheelchair was essential. However, this difference of opinion over the course of treatment is insufficient, as a matter of law, to establish deliberate indifference. See Toguchi, 391 F.3d at 1058, 1059-60. Dr. Williams' recommended course of treatment was to increase movement and follow an exercise program. Nevertheless, he was willing to recommend that Plaintiff be given a trial of physical therapy in the hopes of demonstrating that a wheelchair and additional pain medication was not the most suitable course of treatment. As such, Plaintiff has failed to show that Dr. Williams' recommended course of treatment was medically unacceptable under the circumstances and that he chose this course in conscious disregard of an excessive risk to Plaintiff's health. Id. at 1058. Rather, Dr. Williams clearly had Plaintiff's best interests in mind as he believed that a wheelchair would increase Plaintiff's pain and prove more harmful in the long-term. Defendant has met his burden of demonstrating the absence of a genuine issue of material fact. Plaintiff has filed no opposition pointing to specific facts that show there is a genuine issue for

trial on his medical claim against Dr. Williams. Accordingly, Defendant is entitled to judgment as a matter of law. See Celotex Corp., 477 U.S. at 323.

**CONCLUSION**

For the reasons stated above, Defendant Williams' motion for summary judgment is GRANTED. (Docket No. 46.)

This order terminates Docket No. 46.

DATED: 7/2/2013

EDWARD J. DAVILA
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

RUSSELL D. MILES,

Plaintiff,

v.

DR. MACK, et al.,

Defendants.
______________________________/

Case Number: CV10-05948 EJD

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on 7/2/2013, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Russell D. Miles #AA7376
Salinas Valley State Prison
P.O. Box 1050
Soledad, CA 93960

Dated: 7/2/2013

Richard W. Wieking, Clerk
/s/ By: Elizabeth Garcia, Deputy Clerk